Kevin James Teeman Pro Se

Andrea Joy Lyons Pro Se

12070 Mieras Rd

Yakima Washington 98901

Persecuted1@yahoo.com

1 509 386 9317

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 23 2016

SEAN F. McAVOY, CLERK
DEPUTY
YAKIMA, WASHINGTON

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN JAMES TEEMAN<br><br>ANDREA JOY LYONS,<br><br>Plaintiff,<br><br>vs.<br><br>Defendants,<br>*State of Washington DSHS,*<br>STACI FOSTER In Their Individual and Official Capacity, DOREEN PEREZ In Their Individual and Official Capacity, DEBBIE N. CHARD In Their Individual and Official Capacity, CLAUDIA ROCHA-RODRIGUEZ In Their Individual and Official Capacity, AND an Unknown Individual (to be named at a later date) In Their Individual and Official Capacity, Inclusive | **Case No.:** **1:16-cv-03040-SMJ**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**Claim 1:** Violation of Federal Civil Rights<br><br>**Claim 2:** Monell-Related Claims<br><br>**Claim 3:** Violation of State Civil Rights<br><br>**Claim 4:** Intentional Infliction of Emotional Distress<br><br>**Claim 5:** Negligent Infliction of Emotional Distress<br><br>**Claim 6:** Negligence<br><br>**Claim 7:** Liability for Children's Tort<br><br>**Claim 8:** False Imprisonment<br><br>**Claim 9:** Assault<br><br>**Claim 10:** Battery<br><br>**Claim 11:** Abuse of Process<br><br>**Claim 12:** Invasion of Privacy<br><br>**Claim 13:** Declaratory Relief |

On September 12th 2014 social worker Staci Foster of Yakima Child Protective Services/CPS did conspire with Yakima County Sheriffs Office ,YCSO Deputy Leo Hull to illegally seize A and C at Plaintiff's residence 12070 Mieras Rd. in Yakima, Washington and N and J at East Valley Elementary School in Yakima, Washington. Staci Foster and Deputy Leo Hull acted in concert and conspired to seize Plaintiffs children C, A, N, and J, without a warrant and in the absence of any exigency. At the time of seizure, there was no reasonable or articulable evidence to suggest that either child was in immediate danger of suffering severe bodily injury or death at the hands of their parents in the time it would have taken to obtain a protective custody warrant. Contrary to the child custody transfer, C and A were removed from the residence and N and J were removed from East Valley Elementary at the hands of an unknown individual. The falsified child custody transfer document is misleading because it states that they removed at 11:30 p.m., which cited RCW 13.32a050 that states a curfew violation when in fact C and A were removed from the residence of the parents of 12070 Mieras Rd Yakima, Washington at approximately 11:55 a.m., J and N were removed from East Valley Elementary approximately 2 p.m. by an unknown individual which would clearly give facts that unless the kids were being removed from East Valley Elementary that J and N were in immediate danger of life or limb from the East Valley Elementary would be the only reason for removing J and N since J and N were not any where near the residence of the parents, but the supervision of East Valley Elementary.

Staci Foster falsified the risk assessment documents prior to the illegal seizure to justify her actions who was acting under color of law at all times. Staci Foster states, that I, Kevin Teeman and Andrea Lyons have had arrests prior to the last 12 months and conviction history prior to the last 12 months. Staci Foster also states that I Kevin Teeman and Andrea Lyons have had prior number of CPS intakes assigned for intervention was checked for one or two for neglect. Staci Foster also states in her risk

2

assessment document that I Kevin Teeman and Andrea Lyons lack parenting skills and employs excessive/inappropriate discipline.

Yakima County Sheriff's Office ran a query three separate times on 9-11-2014, 9-12-2014, and 9-29-2014 with no prior history of any of the above mentioned by CPS. Kevin Teeman the father and Andrea Lyons the mother have no criminal record whatsoever.

## DECEPTION IN THE PRESENTATION OF EVIDENCE, MALICIOUSLY WITHHOLDING EXCULPATORY EVIDENCE, AND FALSIFYING TESTIMONY

Staci Foster interviewed J and N at East Valley Elementary without parental consent. N specifically states, " She doesn't feel comfortable talking to Staci Foster and N wants to call her dad". Staci Foster denied N's request to call her dad. This is a violation of civil rights violation by Staci Foster. Staci Foster coerce's the children to be able to create a written report of the interview with the children, which was not recorded or taped, that was entered in the dependency is all defacement of character and perjury. J did not say,"Kevin's fantasy would be to spank us all the time". Direct quote from Staci Foster's dependency petition. J also never said," Kevin spanks him on the bare butt with a belt". Staci Foster also states."Kevin's story does not match the children's story". These are quotes directly from Staci Foster's dependency petition. Staci Foster also claimed," Due to imminent harm of the children YCSO Deputy Leo Hull took protective custody". This is not true as stated in the dependency petition. According to Deputy Leo Hull's police report which states,"Foster and I thought it would be in the best interest of the children to be placed into the custody of CPS. Until a child professional could examine

3

the injuries of C and make an assessment". By September 12th 2014 C had already been examined by two child professionals, Dr. Roy Pearson and Dr. Shawn Wilson. Who together have over 50 years of experience in child professional care. With two licensed physicians by the State of Washington neither one mentioning abuse or neglect in any of their reports, who have every obligation under mandatory reporting and legal authority to remove the children if they suspect any abuse or neglect. Under RCW 26.44.030 (8) states a second licensed physician of the parents choice believes that such expert medical opinion is incorrect, the child maybe left in the parents home while the department proceeds with reasonable efforts to remedy parenting deficiencies.

Staci Foster never corroborated the allegations from the referrer by obtaining a notarized statement or affirmation from Eric Gaden because she knew it was a case of false reporting. The factual evidence is based upon that two licensed child professionals never once claimed that abuse or neglect was the cause of the injury for C, which Dr. Wilson actually states that the fall matches the break. Dr. Wilson also states to Andrea Lyons that Eric Gaden was not the one who made the referral.

The sheriff's law incident table states,"She needed to further investigate and possibly remove the children". The report also states," Request assistance with interview with parents of a four month old child w/broken femur, may be taking child from home". Staci Foster employed by CPS and Leo Hull employed by YCSO acted in concert while illegally removing C and A from my home without a court order, and without a warrant, illegally seized J and N from East Valley Elementary, in the absence of any exigency. At the time of seizure, there was no reasonable or articulable evidence to suggest that either child was in immediate danger of suffering severe bodily injury or death at the hands of their parents in the time it would have taken to obtain a protective custody warrant.

4

September 12th 2014 Staci Foster was driving the state's minivan. This is the vehicle driven when illegally seizing children. This is proof she was coming to illegally seize the children without a warrant. Staci Foster never got an affidavit from the person alleging abuse. In all the Dr's reports none of them even used or hinted the word abuse and or neglect. All were exonerating and exculpatory. Regional's report is to the contrary of Staci Fosters allegations, reading the report goes quite in depth as into the physical description and state of C, "the patient does not have obvious signs of a basilar skull fracture, no battle signs, no hemotympamun, no nasal drainage, no raccoon eyes, lightly blueish sclera". As a mandatory reporter Dr. Shawn Wilson has the authority to remove the children if he suspects that the child were abused or in imminent danger. Dr. Shawn Wilson did not remove C from the parents because he knew there was no neglect or abuse. C was seen by Dr. Roy Pearson Orthopedic surgeon. He did not remove C from the parents because he knew there was no neglect or abuse. Dr. Pearson's report states," The child is comfortable, happy, and in no distress". Staci Foster's so called allegations of her investigation alleges abuse because of their Dr's. Report from Seattle's Children Hospital and Kenneth Feldman's office over two hours away. According to Staci Foster she claimed that their was abuse, because of their alleged documents from Seattle Children's Hospital and Feldman's office. I filed a FOI request to Seattle Children's Hospital and Dr. Kenneth Feldman's office who replied 3-26-2015 stating that," I am responding to your request to notify you that we do not have medical records pertinent to Dr. Kenneth Feldman on file. There has never been a patient care relationship established at Seattle Children's for C. We have researched in length with our children's protection program, as well with the state case worker, Staci Foster". Staci Foster's allegations of abuse of C was seen prior by two child professionals who specifically state there was no neglect or abuse, yet Staci Foster working for CPS and Sunset Brinton who brought forward child neglect or abuse allegations toward myself without any physical evidence with Staci Foster being the only adult witness for the state for the nonfactual allegations. September 17th 2014 Judge Robert W. Inouye

5

specifically asks Sunset Brinton who is the witness and Sunset states Foster is the States Witness. Staci Foster claims kids were removed do to Kenneth Feldman from Seattle Children's Hospital report which is dated September 15th 2014 Plaintiff's kids were removed September 12th solely based on a report that does not exist, from Seattle Children's Hospital, there is only an email written by Kenneth Feldman that states, "We will not be able to process your med con request in a timely manor until all the above questions and information are provided". Staci Foster fraudulently miss quotes the RCW to Yakima Valley Regional, Dr. Steve Taylor and Dr. Roy Pearson's office to obtain confidential medical records of C which is miss leading giving the impression under color of law which she has legal authority to obtain confidential medical records, which she does not have. She did this by acting as a CPS investigator when in fact she is only a social worker 3. She miss quoted RCW codes to give the impression that she had access to highly classified medical documents which she did not. She did this to pursue in concert a conspiracy with the YCSO and the AAG Sunset Briton to maliciously, intentionally, racially motivated, with evil intent to create and pursue a case that did not exist by fabricating and falsifying evidence while at all times acting under color of law. Staci Foster submitted a falsified Request for Release of Medical Information on 9-11-2014 to every Dr. office that was involve at this time, by miss quoting The RCW 26.44.030 (11) states per Staci Fosters fraudulently submitted document," Upon receiving a report of the child abuse and neglect, the department or investigating law enforcement agency shall have access to all relevant records of the child in the possession of mandated reporters and their employees." This fraudulent document that Staci Foster submitted to all Dr's involved was submitted even before the children were removed from Plaintiff's custody on 9-12-2014 which clearly shows Staci Foster has no respect for the Federal and State laws along with legal procedures, protocol, and civil rights. The assigned ad litem would have been the one who investigates the allegations and reports the findings to CPS. Staci Foster wouldn't be able to obtain highly classified medical records before 9-17-2014 when the dependency was filed in court. This clearly shows Staci

6

Foster acted under color of law by submitting fraudulent documents to obtain highly classified medical records that she would not have access to.

The Sheriffs department states at no time have Myself Kevin Teeman and Andrea Lyons have ever been under criminal investigation or any criminal investigation by YCSO. The closest that YCSO has came to being a part of an investigation were 3 queries on myself. Staci Foster states in the dependency petition that, "They have an active investigation in process". The sheriffs department did not have an investigation, they only had a referral which was not being investigated. The only active investigation was Staci Foster who was trying to further her case of fraud, conspiracy, racially motivated, and slander to attempt to prove that she had legal authority to remove the kids without a warrant.

## IN SUMMARY OF INTENT

1. Staci Foster claims that a report on September 11th 2014 taken by Mary Baton employee of CPS claims Referrer Eric Gaden attending R.N. from Yakima Regional Medical Center ER who is calling to report (because of the mandatory reporting law) an injury to a child, C,"where the story doesn't seem to quite match the injury". Staci Foster has never produced an affidavit or notarized statement or produced any report stating that when C was taken in for an x-ray approximately at 12:08 a.m. that C showed or had signs of neglect or abuse, from a Yakima Regional Hospital employee. Dr. Shawn Wilson was the attending E.R. Physician, who told,"Andrea Lyons on numerous occasions he knew it wasn't abuse, as the child had no bruising. The attending physician has the authority by law at anytime who suspects there is eminent harm or danger to the child. He could and would have removed the child if he would have suspected abuse.

7

Dr. Shawn Wilson released C into Andrea Lyons care because as a mandatory reporter Dr. Shawn Wilson made an assessment based on over 18 years of his medical knowledge and experience on facts from his physical evaluation and examination not to remove the child from Andrea Lyons care because he knew there was no abuse. Within 15 hours on September 11th 2014 Kevin and Andrea had a 3 o'clock appointment to see Dr. Roy Pearson Orthepedic Surgeon who has over 32 years of knowledge and experience did not remove C from the care of Kevin and Andrea because he knew there was no signs of abuse or child neglect. We requested a full examination of the children while in CPS's custody that following Monday September 15th 2014 by Dr. Steve Taylor Plaintiff's family Dr. Who has over 23 years of experience and knowledge. Dr. Taylor also stated to the Grandmother there was no signs of abuse or neglect. He and his nurses told us they have never suspected abuse or neglect of the children and that CPS was completely wrong. Staci Fosters claims of abuse had both C and A radiated with numerous cancer causing x rays needlessly. This one would have to consider abuse as radiation causes cancer, a proven fact.

2. UNISEF Article July 29th 2015 on breast feeding. Breast feeding has an extraordinary range of benefits, has profound impact on child survival, health, nutrition, and development. Breast milk provides all of the nutrients vitamins and minerals in an infant needs for growth for the first 6 months and while breast feeding no other liquids or foods are needed. In addition breast milk caries antibodies from the mother that help combat disease. Due to the amount of stress and lack of sleep while CPS acting under color law to hold plaintiff's children hostage, Andrea quit producing milk during these events and her milk supplied dried up.

8

3. Staci Foster illegally interviewed N and J on September 12th 2014 at East Valley Elementary without parental consent. Staci Foster did not record or tape the interview. What Staci Foster claims was said by N and J was written in Staci Fosters own words and not what was actually said by N and J with Colleen Crowston is the principal of East Valley Elementary school who was present at the time of the interview who states that what Staci Foster had written in her dependency was not what J and N had said in the interview. Staci Foster in her dependency report has numerous contradictions and perjury from what she reports was said verses what was actually said.

4. Staci Foster working for CPS and conspired with Deputy Leo Hull to illegally seize Kevin Teeman and Andrea Lyons four children with no factual evidence and without a warrant on September 12th 2014.The dependency stated the children were removed due to imminent danger, contradicting the sheriff's report. Staci Foster would have known legal procedure. A statement would have been left at the residence where the children were illegally seized as to what imminent danger there was. A hearing would have to prove factual evidence as to the the imminent danger before a dependency could be filed. A reasonable person working for CPS and Staci Foster as a level 3 SW, would have known that this would be malicious prosecution.

5. Staci Foster miss led the court with her Dependency Hearing by fabricating and fraudulently creating documents because she did not get a notarized affidavit or affirmation from the referrer who alleged abuse. She based her sole findings on her own opinion with racial motivations and intentions with no evidence. Staci Foster based her

9

alleged case on no evidence whatsoever, perjuring herself in court regarding the need of shelter care. Which must be supported by sworn testimony, affidavit, or declaration of the person offering such evidence. A notarized statement from the referrer alleging abuse or neglect, wasn't entered as evidence as there was no factual evidence. The Dependency Hearing is a vital hearing which the custody of a child is made based on evidence provided by the Dependency Investigator in a juvenile dependency action. According to the training provided by the State to its CPS employee's, the Dependency Report is the primary evidentiary document the juvenile court will rely on in making its Prima Facie findings regarding the propriety of the detention of the child from their parents and/or family home to continue out of home placement. The matter set out in the Dependency Report is required to be honest, accurate, and complete in all material facts and respects.

6. Staci Foster removed Dr's documents that were illegally obtained. She removed exculpatory evidence from her discovery that would have exonerated Kevin Teeman and Andrea Lyons, this matter would have been dismissed and the 4 children would have been placed back into custody of the parents Kevin Teeman and Andrea Lyons Sept 17 2014.

7. Kevin Teeman and Andrea Lyons have no criminal record. During this time the sheriffs office per CPS had ran 3 queries, 1 of which was done the day before Staci Foster was assisted by Yakima County Sheriff's office September 11th before Plaintiff's 4 children were illegally seized and another one, the day which our four children were illegally seized on September 12th 2014, which still came back with no criminal record. At no

10

time was Andrea Lyons name ever ran for queries to verify if she had a criminal record or not, but Staci Foster had told everyone which includes but not limited to all doctors and both hospitals involved that we were under criminal investigation. We were under criminal investigation, which is slander to our good names. She also submitted a falsified Risk Assessment Report to the sheriff's office in regards that myself Kevin Teeman and Andrea Lyons has had prior allegations of child neglect and or abuse. Which is criminal intent by miss leading and fraudulently falsifying documents that are not true or factual.

8. Staci Foster slandered and defamed our character the name (s) of Kevin Teeman and Andrea Lyons with racial intentions and maliciously pursued prosecution to cover up her reckless disregard for the children's safety and completely disrupting the family unit when she conspired and acted in concert with the Yakima County Sheriff's Office to illegally seize our 4 children under the color of law.

9. Staci Foster's business card does not state or show her being an investigator, but only states social worker 3 and not an investigator as per falsified documents that Staci Foster used in her request for release of medical information/records. Staci Foster acting solely as the only states witness who only states alleged abuse with no factual evidence, claims that the allegations of abuse were factual, as well as a self proclaimed investigator of the the allegations of abuse and neglect. Staci Foster being a witness, (Blacks Law Dictionary defines witness: One who sees, knows, or vouches for something.) without corroboration from the referrer, Eric Gaden, Staci Foster would only have hear say testimony, which is inadmissible under the rules of evidence,

11

therefore removing her testimony as a witness. When in fact their was a witness to the accident who Staci Foster took her statement, who verified that it was an accident and not neglect or abuse as Staci Foster would lead one to believe. This witness's statement was never filed with the Dependency Hearing. Staci Foster as being the states witness, holds Staci Foster personally liable and accountable for her own actions for being racially motivated to slander and maliciously with evil intent to hold proceedings solely and completely based off her own testimony without a preponderance of evidence which there was no factual evidence to base her allegations of neglect or abuse upon. This factual evidence was not sworn into evidence during the Dependency Hearing.

10. Dehanna Teeman, Kevin Teeman's former wife, contacted CPS on 9-18-2014 to vouch for my character. Staci Foster who entered in case notes." T/C from Anna Teeman with concerns about the on-going investigation into the father of the child that reside with her. She would like CPS to return her call and let her know if Kevin is safe to be around her child". Dehanna confirms that she spoke with someone from CPS and told them that Kevin was not a child abuser and that she was with Kevin for over 17 years. They said," she could not speak with her legally as it was an ongoing criminal investigation". Mark Geerhart J and N's father went into CPS and talked to Staci Foster to vouch for Kevin's character and specifically told Staci Foster, "Kevin did not spank J and N that he would of known about it".

11. Staci Foster furthered her malicious prosecution by stating in the intake assessment that Kevin Teeman had a past criminal record of 12 months and in the last 12 months. Out of the 3 queries that were ran by the Yakima County Sheriff's Office per request of the CPS

12

department there was nothing stating that Kevin Teeman has had or ever had a criminal record or been arrested past or present. She also states that I, Kevin Teeman had at least one or two counts of prior neglect or abuse, which were maliciously falsified with evil intent.

12. Staci Foster perjured herself in the dependency that the child was abused and that their was no parent, guardian, or custodian capable of taking care of the children with in the household, which put a burden and completely disrupting the family unit traumatizing the family as a whole, with complete slander and maliciously racially motivated and evil intent of disrupting the family unit to bring forward charges that were fabricated and nonfactual. Staci Foster committed perjury to further her conspiracy to avoid admitting she illegally seized the four children with Deputy Leo Hull under the color of law on September 12th 2014.

13. Staci Foster told all involved including but not limited to East Valley Elementary Principal Colleen Crowston, Yakima Regional Hospital, Yakima Valley Memorial Hospital, Dr. Steve Taylor's office, Dr. Roy Pearson's office, Dr. Allen Greenwadt's office that Kevin Teeman and Andrea Lyons were under criminal investigation by YCSO which is defamation of character and slander. This has created a stressful and hostile working situation for Andrea Lyons because Andrea Lyons works within the medical community with majority of the Dr.'s and staff associated with the departments mentioned but not limited to.

14. Juvenile Justice Department did not assign an ad litem to this case as in any judicial

13

proceedings which is alleged that a child has been subjected to abuse or neglect, the court shall appoint a guardian ad litem unless the children have counsel. The children at no time ever had counsel therefore a guardian ad litem should have been assigned in the children's best interest. Staci Foster as a social worker 3 being educated and familiar with Washington state laws, departmental procedure, and protocol would have known that there should have been a guardian ad litem legally should been assigned by the court. Staci Foster who took it upon herself to act as the ad litem and create her own investigation and manufacturing evidence of slander while being racially motivated to maliciously have Kevin Teeman prosecuted for falsified allegations of abuse based upon non factual evidence created by her own opinion. The guardian ad litem assigned to the case for investigative purposes and the purpose of the court as to findings and any other evaluations and suggestions which the ad litem shall feel deemed necessary to the court. Staci Foster intentionally and knowingly continued the conspiracy against Kevin Teeman and Andrea Lyons of falsified allegations of abuse even though she knew she was in violation of numerous Federal and state laws along with her own department policies and procedures. Staci Foster has no respect for Federal and State laws along with legal procedures, protocol, and civil rights.

15. On 10-14-2014 Debbie N. Chard SW states that Supervisor staffed with AAG who said we do not have enough to file because the departments consultants for CA/N along with Dr's from children's hospital in Seattle agreed that the injuries the child suffered were consistent with the parents explanation. Documents signed 11-25-2014 by Certified mail sent from CPS to Kevin Teeman from Claudia Rocha Rodriguez states that the allegations of abuse were founded by CPS as to the documented accounts by law

14

enforcement. Two months prior YCSO closed the case as unfounded, because of Claudia Rocha Rodriguez's maliciousness and evil intent to maliciously prosecute and claim allegations were founded by CPS was a violation of my constitutional rights and due process. I would have been branded as an abuser in a national sex offender's data base which, therefore I wouldn't of been able to pass a back ground check for employment and chaperone any school functions for my children. YCSO was the involved law enforcement agency which by their own affirmations states allegations were unfounded on 9-25-2014 and sheriff's department closed the case on 9-25-2014. On 1-20-2015 by certified mail I Kevin Teeman received another document from CAPTA project manager Theresa Malley stating that you have requested that I review that founded report. I have had an opportunity to conduct a review of the social workers investigation and resulting findings. Based on that review I have concluded that the finding of abuse or neglect is correct, no changes to that finding will be made. I requested an appeal from office of Administrative Hearings and on 4-28-2015 allegations of abuse or neglect were unfounded and dismissed by the office of Administrative Hearings.

## Statement of Facts

For the reasons listed above but not strictly limited to, Plaintiff's find that the actions of Staci Foster, Doreen Perez, Claudia Rocha Rodriquez, Debbie N. Chard, and an Unknown Individual, inclusive, employed by Child of Protective Services a division of the Department of Social and Health Services are held liable in the amount for $40,000,000.00 and not less than, for Staci Foster's and others associated with this case for racism, civil rights violations, slander, malicious prosecution, punitive damages, and defamation of character for attempting to bring forth allegations of alleged abuse and or

15

child neglect with no legal basis while acting under color law while illegally seizing and holding our 4 children for ransom in order for Kevin Teeman and Andrea Lyons to sign their documents admitting that they had cause to illegal seize and hold plaintiff's children for ransom until we signed their documents.  The allegations of abuse and or neglect were found unfounded, but yet Plaintiff's children were held hostage for three weeks in state custody at which at anytime CPS could have given the children back.  On 9-25-2014 The sheriff's office closed the case with allegations being unfounded, it was not until April 28th 2015 in Office of Administrative Hearings representing myself Pro Se when special prosecutor representing CPS without submitting any evidence the judge ruled that all charges and allegations were to be dismissed by reversing the charges of allegations of neglect and abuse from founded to unfounded.  Staci Foster violated Plaintiff's constitutional rights to raise and associate with Plaintiff's children, free from governmental interference. And numerous other civil rights violations against Plaintiff's children and us the plaintiffs. The legislature finds parents and children often are not aware of their due process rights when agencies are investigating allegations of child abuse and neglect, although there were no allegations. The legislature reaffirms that all citizens, including parents, shall be afforded due process, that protection of children remains the priority of the legislature, and that this protection includes protecting the family unit from unnecessary disruption. The department shall notify the parent of any allegations of child abuse or neglect at the initial point of contact, this wasn't done.  I have documents that the children were removed from Plaintiff's custody without cause and due process. Washington state law also states that if a second licensed physician of the parents choice believes that such expert medical opinion is incorrect the child may be left in the parents home while department proceeds with reasonable efforts to remedy parenting deficiencies the children can be returned to the custody of the parents if a second Dr. says there was no abuse. Staci Foster Violated Plaintiff's constitutional rights to family association. Staci Foster maliciously failed to provide the court with exculpatory evidence and acted recklessly in total disregard for Federal and State laws along with legal

16

procedures, protocol, and civil rights, completely disrupting the family unit. While continuing the unlawful policies, practices, and procedures pertained to the detention of Plaintiff's children, continuing detention after learning there was no basis to do so, using trickery, and fabricated evidence.

## Relief We Are Seeking

### FIRST CLAIM FOR RELIEF

### COUNT 1

### For Violation of Civil Rights (42 U.S.C. Section 1983)

*(Procedural Due Process, Unlawful Seizure, Invasion of Privacy, and Interruption of Familial*

*Association/Failure to Intercede*

*BY PLAINTIFF's Kevin Teeman and Andrea Lyons*

*Against Defendants Staci Foster, Debbie N Chard, Claudia Rocha-Rodriguez, Doreen Perez,*

*and Unknown Individual, inclusive*

16. Plaintiffs re allege, and incorporates herein as if set forth in full. Plaintiffs are individuals and citizens of the United States, protected by 42 U.S.C Section 1983, et seq.

17. At all times relevant herein, the right to familial association guaranteed under the First, Fourth, and Fourteenth Amendments to the United States Constitution was "clearly established" such that any reasonable social services agent and/or police officer in Defendants; situation would know it is unlawful to seize a child from the care, custody, and control of its parents or to question, threaten, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so. Furthermore, any such reasonable social worker and/or police officer would know that to do so would constitute a violation of the parents', and child's, well

17

elaborated constitutional right to live together without governmental interference – which rights are protected under the First, Fourth, and Fourteenth Amendment's to the United States Constitution.

18. Defendants, And each of them, had, at all times relevant herein, and affirmative duty and obligation to recognize, acknowledge, and respect the Plaintiff's rights, and to conduct themselves in a manner that confirms, provides for the preservation of, and does not violate the rights guaranteed Plaintiffs under the United States Constitution, including without limitation, the protection of parental rights, the right to privacy, family integrity, and the right to familial relations.

19. Defendants, and each of them, were acting under color of state law when they jointly acted in concert, or knew and agreed and thereby conspired, to violate Plaintiffs' constitutional rights by, but not limited to, removing, detaining, and continuing to detain C, A, J, N, from the care, custody. And control of their parents without proper just cause and/or authority, and in the absence of exigency – thereby violating Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

20. At no time ever did any of the Defendants have any specific, articulable evidence to support any reasonable basis to believe that any the Plaintiff's children were in immediate danger of sustaining serious bodily injury or death that would justify seizing C, A, J, and N. Defendants jointly acted in concert or conspired to seize the children, as described above, knowing that exigent circumstances did not exist.

21. At the time of seizure, other more reasonable and less intrusive alternative means existed to secure Plaintiffs' civil rights and security, short of the warrantless seizure and detention of Plaintiffs' children, yet these Defendants, and each of them, intentionally, or with a reckless, wanton, or malicious disregard for Plaintiff's rights, failed to pursue or investigate such less

18

intrusive alternative means of keeping the family together.

22. Defendants committed said unconstitutional acts without proper justification or authority, and without probably cause, or exigency. Defendants, and each of them, maliciously violated and/or conspired to violate the civil rights of Plaintiff's, including violation of Plaintiff's rights found in the Fourteenth amendment of the United States Constitution, by. But not limited to, removing, detaining, and continuing to detain the children from the care, custody, and control of their parents, without proper or just cause and/or authority, and by use of coercion, duress, or fraud to obtain, or attempt to obtain evidence supporting detention. Said acts were taken deliberately, with callous or reckless indifference to the substantial rights of Plaintiffs, or fueled by an evil motive or intent.

23. As direct and proximate result of these Defendants' misconduct, Plaintiff's has suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

24. Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of the Defendants' misconduct, as herein alleged and described, Plaintiff is entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

COUNT 2

FOR VIOLATION of CIVIL RIGHTS (42 U.S.C. Section 1983)

(Familial Association, right to Be Free From Dishonesty of Public Employees in Juvenile Court Proceedings, i.e. Perjury, Fabrication of Evidence, Suppression of Exculpatory Evidence in Filings with the Juvenile court) By Plaintiff's Kevin Teeman and Andrea Lyons against Defendants, *Staci Foster, Debbie N Chard, Claudia Rocha-Rodriguez, Doreen*

19

*Perez*, and an Unknown Individual, inclusive

25. Plaintiff's re alleges, and incorporates herein as if set forth in full paragraphs

26. At all times mentioned herein, there existed a clearly established due process right of individuals not to be subjected to false accusations by government officials, including by deliberate presentation of false or perjured evidence, and/or by the suppression of exculpatory information, in court proceedings or in documents submitted with recommendations or requests made to the court. At all relevant times mentioned herein, and reasonable social services agents, in similar circumstances to those mentioned herein, would have known it is unlawful to lie, exaggerate, fabricate evidence, and/or suppress material exculpatory evidence in court reports and other documents filed with the juvenile court seeking to influence judicial decision making. Furthermore, any reasonable social services agent in like circumstances as these Defendants would know that such conduct in juvenile dependency proceedings, could result in substantial constitutional deprivations to families under investigation including, without limitation, infringement of parental rights, privacy, family integrity and the right to familial relations.

27. Defendants, and each of them, had the affirmative and self-evident duty to be truthful, accurate, and complete in petitions, reports, and documents submitted to the juvenile court – a court with power to adjudicate substantial rights, including legal and custodial rights of children and parents. Similarly, defendants had a equal duty to refrain from using improper and deceptive means to obtain judicial orders sustaining recommendations disparaging and/or otherwise impairing or impinging upon Plaintiff's liberty interests.

28. Yet the Defendants named in this Count, either singularly, or jointly acted and/or conspired to deliberately or recklessly present false statements and/or make omissions that were

20

material to the finding of probable cause to detain C, A, J, and N from their parents care. In doing the things alleged herein, Defendants, and each of them, were acting under the color of law when they acted, or knew and agreed and thereby conspired, to knowingly, or with reckless disregard for the truth, presented false or fabricated evidence and/or suppress exculpatory evidence before the Juvenile court, thereby violating Plaintiff's rights found in the First, Fourth, and Fourteenth Amendment to the United States Constitution, and breaching their duties to Plaintiffs.

29. As a direct and proximate result of these Defendants' violations, and in accordance with 42 U.S.C. Section 1983, Plaintiff's civil rights have been violated in that he has suffered, and will continue to suffer, general and special damages in an amount of $40,000,000.00 which shall be shown according to proof at trial.

30. The wrongful and despicable conduct of Defendants, and each of them, as herein alleged was intentional, done with malice, oppression, or fraud, with a callous or reckless indifference to the rights of Plaintiff, or motivated by and evil intent, such that Plaintiff is entitled to recover punitive damages in accordance with law and subject to proof at trial.

## SECOND CLAIM FOR RELIEF

### Count 1

*(Monell-Related Claims)*

*By Plaintiff's Kevin Teeman and Andrea Lyons*

*Against Defendant's , Staci Foster, Debbie N Chard, Claudia Rocha-Rodriguez, Doreen Perez, and an Unknown Individual, inclusive*

31. Plaintiff re alleges, and incorporates herein as set forth in full paragraphs 1 through

21

30, inclusive Defendant's , *Staci Foster, Debbie N Chard, Claudia Rocha-Rodriguez, Doreen Perez,* and an Unknown Individual, inclusive, including through CPS, is a "person" within the meaning of 42 U.S.C. Section 1983 and subject to Monell liability. Monell v. Dept. of social Services (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

32. Defendant's, , *Staci Foster, Debbie N Chard, Claudia Rocha-Rodriguez, Doreen Perez,* and an Unknown Individual, inclusive including through its entity CPS, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff's all times to establish, implement and follow policies, procedures, customs, and practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiff under the united States Constitutions, including those under the First, Fourth, and Fourteenth Amendments to the United States Constitution,  to include without limitations, the protections of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized; the right to be free of governmental deception, trickery, fabrication of evidence, and suppression of exculpatory evidence in juvenile dependency proceedings; and the right to procedural due process. Said defendants also has a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within CPS, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff's in order to avoid causing the injuries and damages herein.

33. Moreover, based on the duties charged to Defendant's , *Staci Foster, Debbie N*

22

*Chard, Claudia Rocha-Rodriguez, Doreen Perez,* and an Unknown Individual, inclusive, including the powers to seize children from their parents' care, and it's policymaking official, knew or should have known of the need to establish customs, policies, and practices required to protect the aforementioned civil rights of parents and their children with whom their CPS agents regularly came into contact.

34. Defendant's , *Staci Foster, Debbie N Chard, Claudia Rocha-Rodriguez, Doreen Perez,* and an Unknown Individual, inclusive established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by the Social Worker Defendants, when Plaintiffs constitutional rights were violated by and/or through the seizure of C, A, J, and N in the absence of any exigency or parental consent. At the time of the underlying events, the regularly established customs and practices of CPS that were followed, adhered to, complied with, and carried out by Defendants, were the moving force, that is, the actual, direct, and proximate cause of the violations of Plaintiff's constitutional rights include, but are not limited to:

a.    The custom and/or practice of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order, and/or consent;

b.    the custom and/or practice of using trickery, duress, fabrication and/or false testimony and/or evidence, and in preparing and presenting reports and court document to the Court, causing an interference with parental rights, including those as to familial relations;

c.    The unwritten policy of acting with deliberate indifference to the rights of children and parents with whom CPS can regularly be expected to come into contact by

23

failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendments, when performing actions related to child abuse and dependency type investigations and court proceedings;

d.     the practice of setting forth allegations in Juvenile Dependency Petitions against parents claiming violations, regardless of whether or not specific, articulable evidence exists at the time to support the claims set out in the petition which is required by law to be verified under penalty of perjury;

e.     the practice or custom of making knowingly false allegation of child abuse, neglect, or abandonment in Juvenile Dependency Petitions signed under penalty of perjury as a means of intimidating parents, by coercion, into accepting lesser charges, whether true or not and whether justified by existence of evidence or not, thereby enabling the county to keep the family in the juvenile dependency system and record the case as a positive outcome for purposes of statistical analysis related to funding by the State and Federal governments;

f.     the custom and/or practice of fraudulently charging parents with child abuse where none exists;

g.     the consistent failure by CPS to investigate violations of constitutional rights by social workers, and consistent failure to discipline social workers and their supervisors involved in constitutional violations so that violations of citizen's constitutional rights were not only accepted, but were customary;

(This list is not exhaustive due to the pending nature of discovery and the privileged and

24

protected records of investigative and juvenile dependency type proceedings, Plaintiff's may seek leave to amend this pleading as more information becomes available.)

On information and belief, CPS has engaged in each of the customs and/or practices identified above on an ongoing and continuous at least since 2014, if not earlier, and continues to engage in said practices on an ongoing and daily basis.

35. CPS is aware that its social workers, (1)seize children from the care of their parents without first obtaining judicial authorization when there is no emergency circumstance and in contravention of the rights of both parents and children, (2)regularly engage in deception in the presentation of evidence to the juvenile court, when they file and submit, reports and documents, submitted to the juvenile dependency court, with the intention that it be accepted into evidence and relied upon by the court in rendering its decisions; at least since 2014, if not earlier, and continues to engage in said practices on an ongoing and daily basis.

36. CPS is aware that its social workers, (1)seize children from the care of their parents without first obtaining judicial authorization when there is no emergency circumstance and in contravention of the rights of both parents and children, (2)regularly engage in deception in the presentation of evidence to the juvenile court, when they file and submit, reports and documents, submitted to the juvenile dependency court, with the intention that it be accepted into evidence and relied upon by the court in rendering its decisions. Yet, CPS has made a knowing and conscious decision to refrain from promulgating a policy to prevent such misconduct, and has consistently and knowingly failed to provide any training to its social workers to inform them of the rights of parents and children to remain together absent undue government interference and the obligation to refrain from engaging in deception in the

25

presentation of evidence to the juvenile court. The CPS decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific misconduct alleged herein above, i.e. the known need for a specific policy prohibiting its social workers from seizing children from their parents without a warrant or emergency, is itself a 'policy' decision which constitutes a policy of deliberate indifference. Said policy of deliberated indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing Plaintiff's harm, in that the social worker Defendants both followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard pertaining procedures when they seized C, A, J, and N without specific, reasonable, and articulable evidence to suggest that the children were in immediate risk of suffering serious bodily injury – none of which was constitutionally permissible, and (3)engage in deception in the presentation of evidence to the juvenile court, and all of which would never have happened if CPS had refrained from deliberately ignoring its obligation to promulgate policies and the concomitant training necessary to inform its social workers of the constitutional proscriptions which govern their daily work.

37. Plaintiff's are informed and believes, that Defendant's CPS failed to establish, adopt, and/or implement policies, procedures, and training regarding the constitutional protections afforded to a parent and child by the First, Fourth, and Fourteenth Amendments. Without such policies, procedures, customs, and/or practices in place, CPS social workers were allowed and permitted to engage in conduct that was in violation of Plaintiff's constitutional rights as more specifically alleged in the General Allegation set out herein above. On information and belief, the Defendant's employer CPS failure to adopt such policies was the moving force behind the violations of Plaintiff's constitutional rights and includes, but is not limited to:

26

a.    CPS had no written policy, procedure, custom, practice and/or training delineating the constitutional protections afforded to a parent and child  by the First, Fourth, and Fourteenth Amendments;

b.    CPS had no written policy, procedure, custom, practice and/or training instruction that a social worker must posses "specific, articulable evidence" that a child would be placed at imminent risk of suffering serious harm at the hands of the parent., prior to removing the child from its parent's custody;

c.    CPS had no written policy, procedure, custom, practice and/or training instruction that a social worker must disclose all known exculpatory evidence to the juvenile court; CPS had no written policy, procedure, custom, practice and/or training instructing that a social worker is precluded from including false statement in document or reports to the juvenile court.

1. By deliberately refraining from promulgating any of the aforementioned policies, procedures, customs, practices and/or training, CPS permitted the aforementioned basic policy decisions to be made by the lower level social workers. As result, the CPS policy, custom, and/or practice as established, adopted, and implemented by the social worker defendants – was to detain children from their parents without specific, reasonable, and articulable evidence to suggest that the children are in immediate risk of suffering serious bodily injury, and to engage in deception in the presentation of evidence to the juvenile court. These policies, customs, and/or practices – that disregards the Plaintiff's constitutional protections – was a substantial factor in causing harm to the Plaintiffs. Thus, as a matter of law, because there was not a formal policy preventing the aforementioned misconduct, even though one as obviously needed, the social workers

27

on the line acted on behalf of CPS in making final policy decisions – which is exactly what they did when they seized the Plaintiff's children in the absence of any exigency, and engaged in deception in the presentation of evidence to the juvenile court.

The state law regarding the constitutional protections afforded to a parent and child by the First, Fourth, and Fourteenth Amendments was clearly established well before 2014. As such, CPS knew before 2014 that its social workers required training on the constitutional protections afforded to a parent and child. On information and belief, despite this knowledge, CPS deliberately failed to train its social workers on these constitutional protections including, but not limited to, the following;

a.    CPS did not provide training to its social workers regarding the circumstances under which judicial authorization must be obtained prior to removing a child from the custody of its parent(s)

b.    CPS did not establish any training to its social workers regarding the fact that judicial authorization must be obtained prior to removing a child from the custody of it parent(s); when there was no evidence that the child was in immediate risk of suffering serious bodily injury;

c.    CPS did not provide training to its social workers regarding the well-established constitutional protections afforded to a parent and child by the First, Fourth, and Fourteenth Amendments;

d.    CPS did not provide training to its social workers instructing that a social worker must disclose all known exculpatory evidence to the juvenile court;

e.    CPS did not provide training to its social workers instructing that a social worker is precluded from including false statements in documents or reports to the juvenile

28

court.

38. CPS deliberately failed to train its social workers on these established constitutional protections was a substantial factor in causing the Plaintiff's harm in that CPS agents were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when the Social Worker Defendants (1)seized Plaintiffs child without judicial authorization, parental consent, and in the absence of exigent circumstances, and (2)engaged in deception in the presentation of evidence to the juvenile court.

39. Plaintiffs are informed and believes that, the CPS failed to investigate the social Worker Defendants' (1) seizure of Plaintiff's children without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury, and/or (2)engagement in the deception in the presentation of evidence to the juvenile court, as set fourth in the general allegations. Plaintiff is further informed and believes, that, CPS  never investigates a social worker who (1)seizes a child from its parents' custody without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury, and/or (2)engages in deception in the presentation of evidence to the juvenile court.

40. The seizure of Plaintiff's children from their custody without judicial authorization, parental consent, and without specific, reasonable. And articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury was perpetrated by a social worker and notice of the violations were made clear by Plaintiffs from the very beginning of the encounter. Plaintiffs are informed and believes that the warrantless seizure of his child by the social workers was not an isolated incident specific to their circumstances. On the contrary,

such warrantless and unlawful seizures are regular and recurring. The Defendants engagement in deception in the presentation of evidence to juvenile court was perpetuated by several social workers and occurred over an extended period of time. Plaintiffs are informed and believes that the Defendants' engagement in deception in the presentation of evidence to the juvenile court was not an isolated incident specific to their circumstances. On the contrary such deceptive conduct is regular and recurring.

41. CPS, including by and through its entity CPS and its policymaking officials, breached its duties and obligations to Plaintiffs by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the Defendants, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged with a total and deliberate indifference to the rights of affected parents, including Plaintiffs herein.

42. CPS knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, directly cause Plaintiffs to be injured and damaged by CPS's wrongful practices, or deliberate lack of official policies to prevent the known practices from occurring.

43. In fact, CPS has been aware, since at least 2014, that its CPS agents regularly and customarily seized and detained children from their families, parents, and homes in the manner described herein – i.e., in the absence of any exigency without first obtaining a warrant and then perjury to the juvenile court to keep the children detained, on a regular and continuous basis. Yet, despite such foreknowledge. CPS has deliberately refrained and refused to promulgate any form of prophylactic policy to define accepted conduct of its CPS workers in such a manner as to protect the citizens with whom they regularly come into contact. The conduct described

herein is so pervasive that it has become common knowledge that this type of misconduct alleged herein is commonplace within CPS to such an extent that CPS can be said to be deliberately indifferent to the need to promulgate policies and provide training to rein in its CPS agents, and prevent the type of misconduct alleged herein. Such a policy of indifference was in fact the, moving force behind the violation of Plaintiffs' constitutional rights as alleged herein above. Namely, Plaintiffs civil rights were violated, as mentioned above, when Defendants, *Staci Foster, Debbie N Chard, Claudia Rocha-Rodriguez, Doreen Perez, and an Unknown Individual,* inclusive acting under color of law and in conformance with official customs and practices of CPS and YCSO jointly acted to seize Plaintiff's child without a warrant; and as a result. Plaintiffs has sustained general and special damages, to an extent, but not less than in an amount of $40,000,000.00 to be proven at trial. In addition, Plaintiffs has incurred and will continue to incur, attorney fees, costs and expenses, including those as authorized by U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

## JURY DEMAND

Plaintiff demands a jury trial as to all issues so triable.

## RELIEF WE ARE SEEKING

**WHEREFORE, Plaintiff's prays for judgment against Defendants, as to all causes of action as follows:**

The plaintiffs demands Judgment against the defendants for damages and such other relief as this court deems justified.

31

1.  General damages and special damages according to proof, but in no event less than $40,000,000.00

2.  As against only the individual defendants and not any municipality, punitive damages as allowed by law

3.  Attorney fees pursuant to 42.U.S.C. Section 1988, and any other appropriate statute

4.  Costs of suit incurred herein

5.  Such other relief as the court deems just and proper.

I Kevin James Teeman do here by acknowledge this to be true and correct under penalty of perjury to the best of my knowledge.

_____ Pro Se  3/23/2016
Signature                                          Date

I Andrea Joy Lyons do here by acknowledge this to be true and correct under penalty of perjury to the best of my knowledge.

_____ pro Se  3/23/16
Signature                                          Date

32