# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN JAMES TEEMAN; ANDREA JOY LYONS, | NO. 1:16-CV-3040-TOR |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES, STACI FOSTER, In Their Individual and Official Capacity; DOREEN PEREZ, In Their Individual and Official Capacity, DEBBIE N. CHARD, In Their Individual and Official Capacity; CLAUDIA ROCHA-RODRIGUEZ, In Their Individual and Official Capacity AND an Unknown Individual (to be named at a later date) In Their Individual and Official Capacity, Inclusive, | |
| Defendants. | |

BEFORE THE COURT are the parties' cross-motions for summary

judgment (ECF Nos. 19; 26). These motions were submitted for consideration

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 1

without oral argument. The Court has reviewed the motions, the records and file herein, and is fully informed. For the reasons discussed below, Defendants' Motion for Summary Judgment (ECF No. 19) is **GRANTED** and Plaintiffs' Motion for Summary Judgment (ECF No. 26) is **DENIED**.

## BACKGROUND

Plaintiffs Kevin Teeman and Andrea Lyons filed the Complaint on March 23, 2016 against Defendants Department of Social and Health Services (DSHS) and its employees Staci Foster, Debbie N. Chard, Doreen Perez, and Claudia Rocha-Rodriguez.[1] The Court construes Plaintiffs' Complaint as asserting 42 U.S.C. § 1983 claims under procedural due process, interruption of familial association, the right to be free from false presentation of evidence, and unlawful seizure. Plaintiffs also bring state law claims. ECF No. 1. Defendants move for summary judgment on all claims. ECF No. 19. Plaintiffs also move for summary judgment on all their claims. ECF No. 26.

---

[1] Plaintiffs' Complaint listed another defendant as an "Unknown Individual (to be named at a later date)". ECF No. 1. The Court Ordered that any motion to amend the pleadings or add parties was to occur no later than February 28, 2017. ECF No. 10 at 3. Plaintiffs did not timely name this individual, so the case against "Unknown Individual" is dismissed, as well.

# FACTS

The following are the undisputed facts unless otherwise noted. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Plaintiffs have disputed many facts, but failed to properly support their allegations of perjury, falsity and some other matters. ECF No. 1. Therefore, the following facts are undisputed or deemed so due to Plaintiffs' failure to support any of their contrary assertions with admissible evidence.

Four children live with Plaintiffs Teeman and Lyons, A.T., C.T., J.G., and N.G. Ms. Lyons is their mother and Mr. Teeman is the father of A.T. and C.T. ECF No. 20 at ¶ 1–2. On September 11, 2014, Ms. Lyons took C.T., a four-month old, to the Yakima Regional Hospital after Mr. Teeman told her that C.T. was in the car seat not belted in and fell forward onto the floor. ECF No. 26-1 at 9; ECF No. 21 at 7–8. Ms. Lyons was at work when this occurred. The hospital reported that C.T. had a femur fracture, a complete break of the long bone which is "typically difficult to break." ECF No. 21 at 7–8. On September 11, 2014, Yakima Regional Hospital referred the injury to DSHS as the "story doesn't seem

to quite match the injury."[2] *Id.* This referral was assigned to the Yakima County Sheriff's Office for investigation and to social worker Staci Foster of DSHS. On September 11, 2014, Ms. Foster obtained the medical records for C.T. *Id.* at 8. Ms. Foster attempted a home visit with the address given by the hospital, but it did not exist. On September 12, 2014, Ms. Foster located and interviewed J.G. and N.G. at East Valley Elementary school.[3] *Id.*

Later that day, Ms. Foster made an unannounced visit to the family residence with Yakima County Deputy Sheriff Leo Hull. *Id.* at 9. Mr. Teeman led

---

[2] Mr. Teeman disputes the referral as rank hearsay, ECF No. 26 at 12, as he was not in the emergency room to give a statement. As the reports show, Ms. Lyons recounted what Mr. Teeman had told her regarding how C.T. was injured. Mr. Teeman's hearsay objection is irrelevant to the issues before this Court. Further, the Sixth Amendment confrontation clause only applies to criminal prosecutions, *Crawford v. Washington*, 541 U.S. 36 (2004), and the rules of evidence do not apply to probable cause determinations or shelter care hearings, *In re Welfare of Brown*, 29 Wash. App. 744 (1981).

[3] Plaintiffs allege Ms. Foster "intentionally or recklessly misrepresented her conversations with N.G and J.G." but do not identify any admissible evidence to support this assertion. ECF No. 26 at 7.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 4

them to his shop where the children, A.T. and C.T., were located. Ms. Foster observed A.T. wandering the property alone out of sight of Mr. Teeman and C.T. was alone in the shop buckled to her car seat. *Id.* Deputy Hull then took the children into protective custody due to the imminent risk of harm to the children. *Id.* J.G. and N.G. were placed in the care of their father. *Id.* C.T. and A.T. were placed in the care of their maternal grandmother. *Id.* at 24. Days later, doctors at Seattle Children's Hospital reviewed C.T.'s x-rays and formed a likely diagnosis of osteogenesis imperfecta, a brittle bone condition. ECF No. 26-1 at 179.

On September 30, 2014, a Motion, Declaration and Order of Dismissal Without Prejudice was entered on both dependencies. DSHS decided not to pursue the dependency proceedings and all the children were then returned to Plaintiffs. ECF No. 21 at 44.

Defendant Claudia Rocha-Rodriguez, then a Child Protective Services (CPS) supervisor, became involved in the case once the children were removed from the home. ECF No. 22 at ¶ 3. She attended a family team meeting and, on September 16, 2014, received a telephone call from Ahtanum Medical. *Id.* at ¶ 4. Ms. Rocha-Rodriguez confirmed that Ms. Lyons had the authority to access C.T.'s medical records and make decisions on behalf of her child. *Id.* at 7. On September 18, 2014, she attended an additional meeting with Ms. Foster and an Assistant Attorney General. It was determined that Ms. Lyons could not attend the body or

bone scans of the children because they appeared to be outside the court order. *Id.* at 10. On November 25, 2014, Ms. Rocha-Rodriguez notified Mr. Teeman that the CPS investigation resulted in a finding of abuse and neglect. *Id.* at 13. That was the extent of her involvement.

Defendant Debbie Chard is a supervisor at DSHS. ECF No. 25 at ¶ 2. She became involved in the case after the dependency proceedings were dismissed and the children were returned home. *Id.* at ¶ 3. On October 14, 2014, she attended a meeting regarding the continued safety of the children and it was agreed that DSHS would go to the school one last time to check on the children and then close the case. *Id.* at 6. On October 31, 2014, the father of J.G. and N.G. called Ms. Chard and she confirmed that the case would be closing. *Id.* at 10. That was the extent of her involvement.

During this time period, Defendant Doreen Perez was an Area Administrator for DSHS. ECF No. 23 at ¶ 2. Ms. Perez instructed a social worker to have one final check-in with the children before closing the case. *Id.* at ¶ 5. This was the only involvement she had with the case. *Id.* at ¶ 6.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views the

facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

The moving party bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). There must be evidence on which a jury could reasonably find for the plaintiff and a "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252. Additionally, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A material fact is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.*

Further, a plaintiff may not allege new theories at the summary judgment stage. "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990). Therefore, any new claims not made in Plaintiffs' Complaint will not be addressed.

**A. Section 1983 Claims**

Plaintiffs allege that Defendants DSHS, Ms. Foster, Ms. Perez, Ms. Chard, and Ms. Rocha-Rodriguez violated Plaintiffs' constitutional rights while investigating the possibility of child abuse and neglect. ECF No. 1.

Under section 1983, a cause of action may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws,' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). The rights guaranteed by section 1983 are "liberally and beneficially construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)).

**1. DSHS is not a Person under Section 1983**

It is well settled that states and state agencies are not susceptible to suit under section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). "*Will* establishes that the State and the arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under section 1983 in either federal or state court." *Howlett v. Rose*, 496 U.S. 356, 365 (1990). Here, DSHS is a department of the state government, making it an arm of the state. RCW 26.44.020(8). Therefore, DSHS is not a person under section 1983 and is also protected by Eleventh Amendment Immunity. This Court finds

Defendant DSHS is immune from suit and summary judgment granting its dismissal is appropriate.

**2. Defendants are Protected by Qualified Immunity**

Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity balances the two important interests of holding public officials accountable when they exercise power irresponsibly and also the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.* When this immunity is properly applied, "it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In determining a state actor's assertion of qualified immunity, a court must assess (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. 223. A court may, within its discretion, decide which of

the two prongs should be addressed first in light of the particular circumstances of the case. *Pearson*, 555 U.S. at 236. If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).

Here, Plaintiffs assert due process and Fourteenth Amendment claims, a right to be free from the dishonesty of public employees in juvenile court proceedings, and unlawful seizure under the Fourth Amendment. ECF No. 1. Plaintiffs' Complaint centers mostly upon the actions of Ms. Foster without asserting affirmative misconduct on the part of the other Defendants, but rather assertions of deliberate indifference; e.g., turning a blind eye. ECF No. 1. While the Court focuses on the allegations against Ms. Foster, all Defendants are entitled to qualified immunity.

**a. Due Process and Fourteenth Amendment**

Parents and children have a constitutional right to live together without government interference by guaranteeing that children and parents will not be separated by the state without due process of law except in an emergency. *Jones v. County of LA*, 802 F.3d 990, 1000 (9th Cir. 2015). An official separating a child from his or her parents must obtain a court order unless the official has reasonable cause to believe the child is in imminent danger of serious bodily harm. *Id.*

### 1. Constitutional Violations

Plaintiffs allege that Ms. Foster violated due process and family unity by removing the children from their custody without a warrant. ECF No. 1. Viewing the undisputed material facts in the light most favorable to Plaintiffs, this Court finds no violation of Plaintiffs' due process and family unity rights under the Fourteenth Amendment.

Only a law enforcement officer can take custody of a child without a court order. RCW 26.44.050. Washington law allows a law enforcement officer to take custody if there is probable cause for him to believe the child is abused or neglected and the child would be injured during the time necessary to first obtain a court order. *Id.* Here, Deputy Hull made this probable cause determination. He states, "I was concerned for the welfare of the four month old child because the severity of her injuries given what the father reported happened as well as the delay in seeking medical care for the child." ECF No. 26-1 at 91–92. While Ms. Foster was present when the children were seized from the home, she was not the one to decide probable cause to take the children into custody without first seeking a court order. Therefore, Ms. Foster is not liable for any constitutional violations of separating the family or due process, as she had no authority to and did not

separate the family. Only Deputy Hull had such authority.[4] The children were then transferred to Ms. Foster by Deputy Hull after his belief that probable cause existed for him to act. ECF No. 24 at 5.

Ms. Perez and Ms. Chard did not participate in any separation of the family as their involvement occurred after the children were returned to the home and so they were not involved in any constitutional violations. ECF Nos. 25; 23. Ms. Rocha-Rodriguez was only involved in answering a medical call and attending DSHS meetings. She was not present when the children were taken from the home. ECF No. 22 at ¶ 3. Therefore, these named Defendants are not actors liable for any constitutional violations of due process or family unity under the Fourteenth Amendment.

### 2. Clearly Established Law

Even assuming Defendants violated Plaintiffs' constitutional rights, Defendants are still entitled to qualified immunity.

A right is clearly established when it is "sufficiently clear a reasonable

---

[4] Deputy Sheriff Leo Hull was sued in a prior proceeding, the case was dismissed against him because Plaintiffs failed to raise a genuine dispute of material fact as to whether the warrantless removal was impermissible. *Teeman v. Yakima County Sheriff's Office*, 684 Fed. Appx. 640 (2017).

officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 438 U.S. 635, 640 (1987). A case need not be directly on point, but existing precedent must have placed the constitutional question beyond debate. *al-Kidd*, 563 U.S. at 741. The clearly established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

Here, the right of due process and family unity are clearly established. This Court finds that no reasonable official, in the position of Ms. Foster, would have believed her conduct violative of Plaintiffs' constitutional rights when Deputy Hull was informed of the 4-month old baby's broken leg, travelled to the Plaintiffs' residence, interviewed Mr. Teeman, witnessed the treatment and condition of the children present and placed them under his protective custody. *See* ECF No. 26-1 (Ex. J). Ms. Foster again did not have authority to place the children under protective custody and her presence did not violate Plaintiffs' constitutional rights. Her investigation of the matter was required by law as DSHS must respond to referrals of possible child abuse or neglect through an investigation or family assessment. RCW 26.44.050. A reasonable official would also conduct meetings with other DSHS employees and the Plaintiffs without believing this would violate Plaintiffs' constitutional rights. Ms. Foster acted as a reasonable official and was not legally able to make a determination on separating the family and did not do

so, only Deputy Hull was allowed to do that.

Ms. Perez, Ms. Chard, and Ms. Rocha-Rodriguez also did not participate in the separation of the family and they acted as reasonable officials under the circumstances. Accordingly, this Court finds Defendants are protected by qualified immunity and summary judgment is appropriate on this claim.

**b. False Presentation of Evidence**

Plaintiffs assert "the right to be free from dishonesty of public employees in juvenile court proceedings." ECF No. 1. They allege perjury, fabrication of evidence, and suppression of exculpatory evidence. *Id.* While this is not a clearly established right, the Court construes Plaintiffs allegations to refer to a false presentation of evidence. To survive qualified immunity, these allegations require a heightened pleading standard. A plaintiff must establish a substantial showing of deliberate falsehood or reckless disregard for the truth and that, but for the dishonesty, the challenged action would not have occurred. *Hervey v. Estes*, 65 F.3d 784, 788–89 (9th Cir. 1995) (citing *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991).

Here, Plaintiffs do not meet this heightened standard as they do not offer evidence of falsehood, merely allegations of perjury and falsified documentation. ECF No. 1. Additionally, they have not shown causation; the outcome would not have changed because these alleged falsehoods occurred after the children were

removed from the home. While Plaintiffs' Complaint and Motion for Summary Judgment contain numerous accusations of falsehood, they do not establish a substantial showing of any falsehood material to the outcome of the case or causing any Constitutional violation. Plaintiffs contest the content of the conversation between N.G. and J.G. with Ms. Foster, but offer no support for any contrary allegations. ECF No. 1 at 3. Plaintiffs argue the Child Custody Transfer Sheet is fraudulent because Deputy Hull incorrectly checked "p.m." instead of "a.m.," and listed all four children at home when two were at school. ECF No. 26-1 at 86. This mistake is not material to the case and the sheet's importance is only that Officer Hull made a finding of probable cause and took custody of all four children who were residing with the Plaintiffs, not just the two who were present at the time. Further, Plaintiffs accuse Ms. Foster of photo shopping an RCW in order to obtain medical records, but DSHS has access to all relevant records under Washington law, RCW 26.44.030(14)(a)(ii). ECF No. 1 at 6. The Court determines that Plaintiffs have failed to establish a substantial showing of deliberate falsehood or reckless disregard for the truth, have failed to establish a genuine issue of material fact and therefore, summary judgment for Defendants is warranted on this claim.

   c. **Fourth Amendment**

Plaintiffs allege unlawful seizure of their children under the Fourth

Amendment. ECF No. 1 at 17. The Court does not find a Fourth Amendment violation by interviewing two of them in school.[5] Moreover, Plaintiffs' do not have standing to bring this claim. "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted . . . Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (citations omitted). A parent has no standing to challenge a violation of his or her child's Fourth Amendment rights. *Mabe v. San Bernardino Cty., Dept. of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001). Here, Plaintiffs do not join their children in this suit and so do not have standing to assert this Fourth Amendment claim. The Court concludes that Defendants are entitled to summary judgment on this claim and moreover, Plaintiffs lack standing.

---

[5] Plaintiffs claim that interviewing a child at school without parental consent or a warrant is a Fourth Amendment violation, citing *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009). However, the Supreme Court specifically vacated that holding in order to "strip[] the decision below of its binding effect[.]" *Camreta v. Greene*, 563 U.S. 692, 713 (2011). Thus, it is not clear there is a Fourth Amendment violation, let alone clearly established law that would deprive Ms. Foster of qualified immunity for her actions.

**B. State Law Claims**

Finally, Plaintiffs assert numerous state law claims against Defendants, including violation of state civil rights, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, liability for children's torts, false imprisonment, assault, battery, abuse of process, and invasion of privacy. ECF No. 1.

The Eleventh Amendment bars suit against state agencies. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). DSHS is an arm of the state and therefore immune from suit under the Eleventh Amendment. RCW 26.44.020(8).

Washington law also limits the liability of DSHS employees:

> Consistent with the paramount concern of the department to protect the child's interests of basic nurture, physical and mental health, and safety, the requirement that the child's health and safety interests prevail over conflicting legal interests of a parent, custodian, or guardian, the liability of government entities, and their officers, agents, employees, and volunteers, to parents, custodians, or guardians accused of abuse or neglect is limited as provided in RCW 4.24.595.

RCW 26.44.280. In turn, RCW 4.24.595 provides that government entities and their employees "are not liable in tort for any of their acts or omissions in emergent placement investigations of child abuse or neglect. . . unless the act or omission constitutes gross negligence." RCW 4.24.595(1).

Here, Ms. Foster is not liable for her participation in the placement of the children as her actions were in response to an investigation of child abuse and neglect and Plaintiffs have failed to raise a triable issue of gross negligence or intentional conduct.  Ms. Perez, Ms. Chard, and Ms. Rocha-Rodriguez are also entitled to limited liability under Washington law as government employees acting to protect the interests of the children.  The Court finds that summary judgment for Defendants for these state law claims is appropriate given they are entitled to limited liability and Plaintiffs have not come forward with admissible evidence to demonstrate a triable issue as to any one of these causes of action.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 19) is **GRANTED**.
2. Plaintiffs' Motion for Summary Judgment (ECF No. 26) is **DENIED**.
3. All remaining motions are denied as moot; the trial is vacated.

The District Court Executive is directed to enter this Order and Judgment for Defendants accordingly, furnish copies to the parties, and **CLOSE** the file.

**DATED** September 26, 2017.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 18